# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| CYRUS RANDY WHITSON, | ) |
| Plaintiff, | ) |
| | ) No. 2:14-cv-02696-TLP-tmp |
| v. | ) |
| | ) JURY DEMAND |
| DONNA CHISHOLM, et al., | ) |
| Defendants. | ) |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Defendants Donna Chisholm and Stanley Dickerson[1] move this Court to grant summary judgment on Plaintiff's claims and dismiss this case. (Motion for Summary Judgment ("MSJ"), ECF No. 36.) Plaintiff responded. For the reasons below, Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

Plaintiff Cyrus Randy Whitson a/k/a Cookie[2] brought this pro se complaint under 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment right against cruel and unusual punishment while he was an incarcerated at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. (Pro se Complaint ("Complaint"), ECF No. 1.) Plaintiff claims that he broke his leg when another inmate shoved him down. (*Id.* at PageID 4.) After this incident, he was taken to the WTSP medical facility where he began crying and begging

---

[1] Chisholm and Dickerson are the only defendants remaining.
[2] Plaintiff, Tennessee Department of Corrections prisoner number 237655, is currently incarcerated at the Northeast Correctional Complex ("NECX") in Mountain City, Tennessee.

for an x-ray and pain medicine. (*Id*.) The medical team at WTSP allegedly declined to take an x-ray of Plaintiff's leg and also did not provide him the requested pain medication. (*Id*.) Instead, asserts Plaintiff, the medical staff took pictures of Plaintiff's injuries, wrapped the injured area of Plaintiff's leg, and gave Plaintiff crutches. (*Id*.) WTSP then allegedly transported him to solitary confinement where he continued to beg WTSP employees for medical care. (*Id*.) A nurse visited Plaintiff one day later, and gave him pain medication for his injured leg. (Complaint, ECF No. 1 at PageID 4.)

After the WTSP staff released Plaintiff from solitary confinement six days later, the medical staff performed an x-ray which revealed that Plaintiff had broken his right fibula. (*Id*.) The doctor informed Plaintiff that he would need surgery to repair the fracture. (*Id*.) Plaintiff was then sent to Nashville for surgery. (*Id*.) But he refused surgery even though the doctor informed him that he would continue having trouble with the leg if he did not undergo surgery. (*Id*.) Plaintiff later filed this complaint alleging three claims against various WTSP employees: (1) deliberate indifference; (2) medical malpractice; and (3) cruel and unusual punishment. (*Id*.) Plaintiff demanded money damages and a reduction of his sentence from life imprisonment to ten years. (*Id*. at PageID 5.)

From that point United States District Judge James D. Todd reviewed the Complaint and entered an order partially dismissing the Complaint and directing that the court clerk issue and serve process on the remaining defendants. (Order Partially Dismissing Complaint ("Order"), ECF No. 27.) Judge Todd dismissed claims against Defendants Jerry Lester, Derrick Schofield, and Dr. Larry Anthony under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim on which relief may be granted. (*Id*. at PageID 34.) The Court also dismissed Plaintiff's demand for a reduction in sentence. (*Id*.) The court

clerk later issued process for the remaining defendants. (Notice of Issuance of Summons, ECF No. 8.) Summons were returned unexecuted for William Pugh. Yet summons were served on Donna Chisholm and Stanley Dickerson. (*See* ECF Nos. 11–12.) Thus, Defendants Chisholm and Dickerson are the only remaining defendants.

Defendants have now moved for summary judgment arguing that (1) the medical care and treatment Defendant Chisolm and others provided to Plaintiff was medically appropriate and based on Defendant Chisholm's professional judgment and experience. And they argue that Defendant Dickerson knew nothing of Plaintiff's injuries.

## **LEGAL STANDARD**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, [a] court construes all reasonable inferences in favor of the nonmoving party." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). As for the burden of proof, "[t]he moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party can support its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id*. (quoting *Celotex*, 477 U.S. at 325.)

What is a genuine issue of material fact? "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012). "A *genuine* issue for trial exists where reasonable minds could differ on a material

fact." *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013) (emphasis added). There must be more than "some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is not 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita*, 475 U.S. at 586–87).

The burden of proof can shift to the nonmoving party. "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Mosholder*, 679 F.3d at 448–49; *see also* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587. Rule 56(e) "requires the nonmoving party [who will bear the burden of proof at trial] to go beyond the pleadings" to show the existence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 324. Conclusory allegations, unsupported by specific evidence, cannot establish a genuine factual dispute sufficient to defeat a motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990); *see also* Fed. R. Civ. P. 56(e). Similarly, statements in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992). Additionally, "a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and

summary judgment is proper." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012).

To show that a fact "cannot be or is genuinely disputed," each party must cite "particular parts of materials in the record" or show that the materials cited by other party do not establish the presence or absence of a genuine factual dispute. Fed. R. Civ. P. 56(c)(1); *see also Bruederle*, 687 F.3d at 776. Simply put, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In other words, "the district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Pharos Capital Partners, L.P. v. Deloitte & Touche*, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008), *abrogation recognized by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)).

## **ANALYSIS**

Plaintiff alleges claims of deliberate indifference in violation of the Eighth Amendment[3] under 42 U.S.C. § 1983, and medical malpractice. Defendants seek summary judgment on these claims.

### **I. Eighth Amendment Deliberate Indifference Claim**

Section 1983 claims require the plaintiff to "allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). A person acts under color of state law when the action can be "fairly attributable to

---

[3] While Plaintiff alleges two claims under the Eighth Amendment, one for deliberate indifference and one for cruel and unusual punishment, they are the same claim. Therefore, the Court addresses them as one claim.

the state." *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Defendant Chisholm was acting in her capacity as a nurse practitioner at WTSP and Defendant Dickerson was the deputy warden. They were state actors and thus acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 50–51 (1988). Plaintiff's claim therefore hinges on a finding of deprivation of rights secured under federal law.

Defendant Chisholm argues that Plaintiffs real challenge is to the adequacy of the treatment provided and as such, his claim does not rise to the level of a constitutional violation. And Defendant Dickerson argues that he was unaware of the injury and lacked the authority to override the medical staff's treatment plan. Defendant Dickerson also claims that the Court should not hold him liable for these violations under the doctrine of respondeat superior.

### A. Plaintiff fails to state a claim for deliberate indifference against Defendant Chisholm.

The Eighth Amendment prohibits cruel and unusual punishment. *See* U.S. Const. amend. VIII; *Wilson v. Seiter*, 501 U.S. 294, 296–302 (1991). The protection against cruel and unusual punishment applies to the States through the Due Process Clause of the Fourteenth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 101–02 (1976); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989). This amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency' against which courts must evaluate penal measures." *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (quoting *Estelle*, 429 U.S. at 102).

The Eighth Amendment forbids prison officials from acting with "deliberate indifference to serious medical needs of prisoners . . . ." *Estelle*, 429 U.S. at 104. An Eighth Amendment claim for denial of medical care consists of both an objective and subjective

6

component. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

        **i.     Plaintiff has shown that he suffered a serious enough injury.**

The objective component requires a showing of a "sufficiently serious" medical necessity. *Id*. "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (internal quotations removed)). "Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise." *Id*. Even so, for non-obvious, severe medical conditions, an inmate must "place verifying medical evidence in the record to establish the detrimental effect" of the failure to provide adequate medical care. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (quoting *Napier v. Madison Cty., Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001)).

Plaintiff had a fractured ankle when he was being treated by Defendant Chisholm. (Memorandum in Support of Motion for Summary Judgment ("Memo"), ECF No. 36-1 at PageID 208.) This constitutes a serious enough medical condition. *See Tate v. Wenger*, No. 1:04-CV-379, 2006 WL 1582422, at *10 (E.D. Tenn. June 6, 2006). Plaintiff has thus satisfied the objective component of his Eighth Amendment claim.

        **ii.    Plaintiff has failed to establish the subjective component of his claim.**

To establish the subjective component of an Eighth Amendment claim, a prisoner must prove that the prison official acted with a "sufficiently culpable state of mind" in denying medical care. *Farmer*, 511 U.S. at 834. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

The inmate must show that the prison official subjectively perceived the seriousness of the harm and then disregarded it. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

The law requires Plaintiff to assert more than a mere medical malpractice claim. "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id*. (citing *Estelle*, 429 U.S. 106). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Acting with "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. "When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703. "Where the [prisoner] received treatment for his condition . . . he must show that this treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 604–05 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff has failed to allege that Defendant Chisholm acted with a "sufficiently culpable state of mind" in failing to order an x-ray or provide alternative treatment to Plaintiff. Plaintiff attached the Tennessee Department of Corrections Incident Report to his Response. (ECF No. 37-10.) This report states that the medical staff observed "minimal swelling," no "alteration in comfort," and "no gross deformities." (*Id*. at PageID 306.) The

medical staff gave Plaintiff Tylenol and an ace bandage was applied to his ankle. (Physician's Orders, ECF No. 37-10 at PageID 309.)

This paperwork reflects the testimony provided by Defendant Chisholm in her affidavit. (*See* ECF No. 36-2.) Defendant Chisholm stated that Plaintiff exhibited the typical symptoms of a strain or a sprain. (*Id*. at PageID 219.) In particular, Defendant Chisholm stated that Plaintiff's "leg was not swollen, that he had a normal gait, that he was exhibiting normal weight bearing on his foot/leg, and that he had a full range of motion." (*Id*.) Defendant Chisholm, therefore, provided the treatment she believe to be medically warranted at the time. (*Id*.) Defendant Chisholm also states that she would not have changed the treatment for Plaintiff even if they performed an x-ray, because casting a recently injured extremity is not advisable because of swelling. (*Id*.) Plaintiff received an x-ray test when he returned to the clinic seven days later after the pain continued to persist. This is when the medical staff decided that it was appropriate to x-ray his leg. (*Id*.)

Plaintiff's assertion that he was unconstitutionally denied an x-ray and pain medication[4] is no more than a disagreement with Defendant about the proper course of treatment. Compare *Alspaugh v. McConnell*, in which the plaintiff alleged that prison officials were deliberately indifferent to his neck injury when prison doctors failed to recommend surgery to treat his ailments for over eight months. 643 F.3d 162, 164–66 (6th Cir. 2011). The plaintiff claimed that he injured his neck during a confrontation with prison officials. *Id*. at 164–65. Although the plaintiff had once suffered a broken neck and complained of "sharp needle like pain," prison officials only prescribed warm compresses,

---

[4] Plaintiff's medical report shows that he received Tylenol when the staff first examined him. (*See* Physician's Orders, ECF No. 37-10 at PageID 309.)

Motrin, and the use of a soft cervical collar to allay his pain. *Id*. at 165. The plaintiff only received surgery to alleviate his suffering after he was transferred to another detention facility more than eight months later. *Id*. In holding that prison officials were not deliberately indifferent to the plaintiff's condition, the Sixth Circuit noted that, although the plaintiff "certainly would have desired more aggressive treatment, he was at no point denied treatment." *Id*. at 169. The court articulated that district courts must "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh*, 643 F.2d at 169 (quoting *Westlake*, 537 F.2d at 860 n.5). The court determined that because the plaintiff did receive some treatment not "so woefully inadequate as to amount to no treatment at all," the lower court's grant of summary judgment in favor of the defendant on the claim of deliberate indifference was proper. *Id*.

This case is much like *Alspaugh* because Plaintiff does not allege that Defendant did not treat his medical condition. He instead complains that Defendant should have taken even more steps to diagnose his broken ankle and treat the associated pain. This Court must differentiate between claims alleging that medical treatment was completely denied—or was so wholly inadequate as to amount to no treatment at all—and those where the plaintiff merely disagrees with the level/type of care provided. Plaintiff's medical records establish that while he suffered from continuous pain because of his condition, there is no evidence to suggest the course of treatment the staff gave was inadequate. In fact, the record establishes that Plaintiff received the care that seemed medically appropriate based on his symptoms. (*See* Chisholm Affidavit, ECF No. 36-2 at PageID 220.) Furthermore, the staff took an x-ray and an orthopedic surgeon evaluated Plaintiff when his pain persisted. (*Id*. at PageID 219–

20.) The doctor recommended surgery but Plaintiff refused to undergo the procedure. (Id. at PageID 220.) Even still, Defendant continued to monitor Plaintiff's condition throughout this time. (*Id*.) Plaintiff's argument that Defendant should have performed an x-ray is a disagreement about the course of treatment.

"[F]ederal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *See Westlake*, 537 F.2d at 860 n.5. As in *Alspaugh*, Defendant did monitor Plaintiff's medical condition and tried to treat it. Although Defendant allegedly could have done more to treat Plaintiff's injury, Plaintiff cannot establish that Defendant's treatment plan was "so woefully inadequate as to amount to no treatment at all."

Plaintiff has failed to establish that Defendant acted with deliberate indifference in treating his medical condition. Defendant sought to treat Plaintiff's injury and eventually provided more extensive treatment options when the pain persisted. This case does not rise to the seriousness of a constitutional violation. Thus, Plaintiff has failed to state a claim that Defendant violated his Eighth Amendment guarantee against cruel and unusual punishment by not performing an x-ray and providing him pain medication. Plaintiff's claim against Defendant Chisholm for violating his constitutional rights is DISMISSED.

    **B.    Plaintiff fails to state a claim against Defendant Dickerson.**

        **i.    Defendant Dickerson did not act with deliberate indifference.**

There is a dispute over whether Defendant Dickerson was aware of Plaintiff's injury.[5] (*Compare* ECF No. 36-1 at PageID 214, *with* ECF No. 37-3 at PageID 277.) In any case,

---

[5] That said, Plaintiff has proffered no evidence showing that Defendant Dickerson was present at the time of his injury or shortly thereafter.

Defendant Dickerson lacked the authority to override the treatment decisions of the medical staff at WTSP. (Dickerson Affidavit, ECF No. 36-3 at PageID 243.) As stated above, the treatment provided to Plaintiff does not violate the constitution. As a result, Defendant Dickerson could not have acted with deliberate indifference or with a culpable state of mind in denying Plaintiff an x-ray or additional pain medicine because he was without the authority to provide Plaintiff additional treatment. He, therefore, could not have directly violated Plaintiff's constitutional rights.

> ii. **Defendant Dickerson is not liable under the doctrine of respondeat superior.**

If Plaintiff seeks to hold Defendant Dickerson liable under a theory of respondeat superior, Defendant Dickerson is once again not liable. As stated by the Sixth Circuit, "§ 1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (quoting *Hays*, 668 F.2d at 874).

As stated, Defendant Dickerson did not directly participate, encourage, authorize, or acquiesce in the claimed constitutional violation. And vicarious liability requires the plaintiff to prove that an employee or subordinate committed a violation of law. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("These principles make clear that a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate

of the supervisor.") Here, Plaintiff did not suffer violations of his constitutional rights. There can thus be no finding of a constitutional violation by one of Defendant Dickerson's subordinates. It follows that Defendant Dickerson cannot be vicariously liable. For that reason, Plaintiff's § 1983 claim against Defendant Dickerson is DISMISSED.

## II. Medical Malpractice Claim

Plaintiff has also pleaded a claim for medical malpractice. (Complaint, ECF No. 1 at PageID 4.) The Court has entertained this claim under supplemental jurisdiction. 28 U.S.C. § 1367. Even so, the jurisdictional crux of this case—Plaintiff's § 1983 claim—has now been dismissed. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The balance of considerations usually favors dismissing state law claims when all federal claims have been dismissed before trial. *Id*. at 952 (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244–55 (6th Cir. 1996)). Additionally, 28 U.S.C. § 1367(c)(3) authorizes district courts to decline exercising jurisdiction over supplemental claims if it "has dismissed all claims over which it has original jurisdiction . . . ."

Here, no party has addressed Plaintiff's medical malpractice claim. The Court declines to *sua sponte* grant summary judgment on this claim without first giving Plaintiff an opportunity to respond. That said, the Court finds that it is appropriate to decline exercising jurisdiction over this claim going forward. The federal claims over which the Court has original jurisdiction have been dismissed before trial. Nor does the record reveal that the parties have done substantial discovery on the medical malpractice claim. The Court

13

therefore exercises its discretion under 28 U.S.C. § 1367(c)(3) to dismiss Plaintiff's medical malpractice claim without prejudice.

## **APPELLATE ISSUES**

Under 28 U.S.C. §1915(a)(3), the Court must consider whether an appeal by Plaintiff here would be taken in good faith. The good-faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not baseless. *Id.* The same considerations that lead the Court to dismiss this case on summary judgment also compel the conclusion that an appeal would not be taken in good faith.

As a result, this Court CERTIFIES, under 28 U.S.C. §1915(a)(3), that any appeal here by Plaintiff would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff still appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent-prisoner plaintiff's ability to capitalize on the installment procedures in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610–11 (6th Cir. 1997), *overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the Prison Reform Litigation Act, 28 U.S.C. § 1915(a)–(b).

Plaintiff is thus instructed that if he wishes to benefit from the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated in forma pauperis affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice

of appeal with the Sixth Circuit Court of Appeals within thirty (30) days of the entry of this Order. *See* Fed. R. App. P. 24(a)(5).

## **CONCLUSION**

For these reasons, Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's § 1983 claim is DISMISSED WITH PREJUDICE. And Plaintiff's medical malpractice claim is DISMISSED WITHOUT PREJUDICE. The Court further DENIES Plaintiff leave to proceed in forma pauperis on appeal.

**SO ORDERED**, this 8th day of March, 2019.

                                      s/Thomas L. Parker
                                      THOMAS L. PARKER
                                      UNITED STATES DISTRICT JUDGE